IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| E-ATTACH LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE LLC<br><br>    Defendant. | CIVIL ACTION NO. 6:19-cv-633<br><br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff E-Attach LLC ("Plaintiff") files this Complaint for Patent Infringement against Defendant Google LLC ("Google" or "Defendant"), and states as follows:

## THE PARTIES

1.      E-Attach is a limited liability company organized and existing under the laws of the state of Washington and located at 5232 88th Avenue SE, Mercer Island, Washington, 98040.

2.      Google is a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## JURISDICTION AND VENUE

3.     This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4.     Google is registered to do business in Texas and can be served via its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company at 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

5.     Google maintains a permanent physical presence within the Western District of Texas and has one or more regular and established places of business within the district including at least: 9606 North Mo-Pac Expressway, Suite 700, Austin, Texas 78759; 500 West 2nd Street, Suite 2000, Austin, Texas 78701; and 4100 Smith School Road, Austin, Texas 78744.

6.     In the past year, Google reportedly leased the entirety of the new 35-story office tower under construction on Block 185 in downtown Austin and 150,000 square feet of office space in the Saltillo Plaza in East Austin.

7.     Google currently employs more than 800 people in Austin, Texas.

8.     Google has placed infringing products, like Gmail, into the stream of commerce knowing or understanding that such products would be used in the United States, including in the Western District of Texas.

9.     Upon information and belief, Google has used Gmail in the Western District of Texas.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) on the grounds that Defendant has committed acts of infringement in the district and has a regular and established place of business in the district.

## THE '993 PATENT

11.    E-Attach is the owner by assignment from the inventor, Bernel Goldberg, of all right, title, and interest in and to United States Patent Number 7,092,993 (the "'993 Patent"), titled "Method and System for Customizing e-mail Transmissions Based on Content Detection" including the right to sue for all past, present, and future infringement.

12.    Exhibit A is a true and correct copy of the '993 Patent.

13.    The '993 Patent issued from application no. 10/062,739 filed on February 3, 2002.

14.    The Patent Office issued the '993 Patent on August 15, 2006, after a full and fair examination.

15.    The '993 Patent is valid and enforceable.

16.    The '993 Patent describes a method for customizing e-mail transmissions based on content detection that determines when an e-mail user likely

intends to customize an e-mail message and prompts the user to customize the e-mail message if they have not done so.



17.    Mr. Goldberg, the inventor of the '993 Patent, recognized that "[o]ften, a computer user generating an electronic mail message will intend to customize an e-mail message, but forget some or all of their intended customizations." '993 Patent 1:56-58.   By analyzing information within an e-mail message and providing a prompt, such as, that the user has forgotten to add an email attachment as intended, e-mail communications systems would be greatly improved.

18.    The '993 Patent provides several advantages over the prior art such as: a) reminding the e-mail sender to customize their message as likely intended; b) avoiding the potentially embarrassing and time consuming task of sending a follow up email to correct the customization that was missing from the first email.

19.    The '993 Patent describes and claims a specific way to provide the customization of e-mail transmissions based on content detection by: (1) using an e-mail software program to parse a message for certain keywords such as "attachment", "encrypt", or "signed", and then (2) displaying a dialogue box asking if the e-mail sender wishes to add an electronic signature, encrypt the message, or add an attachment.



**Fig. 2**

20.    A person of ordinary skill in the art at the time of the invention would

have recognized that the steps (and combination of steps) and methods claimed in

the '993 Patent were, at the time of invention, unconventional and describe parsing e-mail messages in a way that, at the time of the invention, was not routine.

21.     A person of ordinary skill in the art at the time of the invention would have understood that, at the time of the invention, there was no conventional manner in which to alert an e-mail author that they had forgotten to attach a file to an e-mail, or encrypt a message, or add an electronic signature, or otherwise customize an e-mail message.  A skilled artisan, at the time of the invention, would have recognized the problem that, once a user pressed the "send" button on their e-mail message, there was no solution to remind or notify the user to customize the e-mail message at that point.

22.     The '993 Patent provides technical solutions to this problem not solved in the prior art: "By parsing the e-mail message prior to sending or upon is [sic] saving an email message, the e-mail program can remind the sender to customize the e-mail message in response to detecting clues" '993 Patent at 3:22-25.

23.     Claim 11 of the '993 Patent states:

11. A method for completing an e-mail transmission, comprising:

    receiving a user input indicating that an e-mail message is ready for parsing;

    parsing said e-mail message for clues comprising phrases indicating that a selectable state of a customization setting other than a state currently selected for sending said e-mail message is likely intended by decomposing sentences within said e-mail message to detect phrases indicating that said other state is likely intended; and

    in response to said parsing detecting a clue, generating a user prompt to indicate to a user that said other state of said customization setting for said e-mail message is likely intended.

24.    A person skilled in the art at the time of the invention would have understood that the step of parsing said e-mail message for clues comprising phrases indicating that a selectable state of customization setting other than a state currently selected for sending said e-mail message is likely intended by decomposing sentences within said e-mail message to detect phrases indicating that said other state is likely intended" was not, at the time of the invention, conventional, well-understood, nor routine.

25.    A person of ordinary skill in the art at the time of the invention would have understood that the step of "in response to said parsing detecting a clue, generating a user prompt to indicate to a user that said other state of said

customization setting for said e-mail is likely intended" was not, at the time of the invention, conventional, well-understood, nor routine.

26.    A person of ordinary skill in the art at the time of the invention would have understood that the combination of steps in claim 11 of the '993 Patent was not, at the time of the invention, conventional, well-understood, or routine.

27.    A person skilled in the art at the time of the invention would have understood that the claims recite steps and structural limitations operating in an unconventional manner to achieve an improved operation of e-mail software and e-mail messaging.

28.    These technological improvements provide greater cost savings and efficiencies in preventing duplicative e-mail messages and lost file attachments.

29.    The novel use and arrangement of the specific combinations and steps recited in the '993 claims were not well-understood, routine, nor conventional to a person skilled in the relevant field at the time of the inventions.

## GOOGLE

30.    Google was founded in 1998 (under the name Google Inc.).

31.    Google now has more than 60,000 employees in 50 different countries.

32.    Google makes hundreds of products and services used by billions of people across the globe.

33.    Google's Gmail is a computer program that allows users to send and receive emails.



34.    Gmail was released to the public in 2004 and has been updated and improved on a regular basis ever since its release.

35.    Google makes Gmail available in a variety of ways including for download to a computer, use on a mobile device such as a cell phone, and through services such as G Suite.

36.    Google's Gmail has more than one billion monthly active users.

37.    Google derives significant revenue from advertisements and promotions delivered to users through Gmail and from paid license subscriptions to Gmail for Business users that range from $6 per user per month to $25 per user per month.



38.    Google Business email uses Gmail and the Google Forgotten Attachment Detector.

39.    The picture below from Google's website (https://gsuite.google.com/products/gmail/) illustrates one of the "Features" of Google's Gmail for Business application:



40.    The   screenshot   above   from   Google's   Gmail-Features   page (https://gsuite.google.com/products/gmail/)   illustrates   a   use   case   for   the   Google forgotten Attachment Detector.

41.    In the example above, the user's email text ("The images are attached.") will trigger the prompt shown below if the user had hit send without first attaching a file to the email.



42.     Google's Forgotten Attachment Detector is a desirable feature in Gmail.

43.     Google added the Forgotten Attachment Detector as a feature in Gmail in response to customer demand.

44.     Google has received positive feedback from users that evidences the value of the Forgotten Attachment Detector.

45.     For example, in a post published by Google, user MSEMHAP commented, "Just like Muzzle, I consider this an essential feature for Gmail.  About 75% of the 100 or so emails I send each day have attachments, and I'm bound to forget every so often."

https://support.google.com/mail/forum/AAAAK7un8RUKfnv46Jc_7g/?hl=en

46.     In its announcement that the Forgotten Attachment Detector had "graduated" from Google's Gmail Labs beta environment to become a standard feature in Gmail, Google provided this description:

**Forgotten Attachment Detector**

From time to time, we all forget to attach a file and sheepishly send another email with the forgotten attachment. To help save you from that embarrassment, Gmail looks for phrases in your email that suggest you meant to attach a file and alerts you if it looks like you forgot an attachment.

47.     Google publishes Gmail tips highlighting the utility of the Forgotten Attachment Detector:



**Official Gmail Blog**

News, tips and tricks from Google's Gmail team and friends.

Tip: 5 things you may not know you can do with attachments in Gmail

June 16, 2010

**3. Never forget an attachment again**

Gmail looks for phrases in your email that suggest you meant to attach a file (things like "I've attached" or "see attachment") and warns you if it looks like you forgot to do so. Every day, this saves tons of people the embarrassment of having to send a follow up email with the file actually attached.

https://gmail.googleblog.com/2010/06/tip-5-things-you-may-not-know-you-can.html

48.     Google ensures the accuracy of the content it publishes on gmail.googleblog.com.

49.     The information Google publishes on https://gsuite.google.com/products/gmail/ accurately describes the Gmail product.

50.     Google publishes technical support information for users of Gmail and the Forgotten Attachment Detector feature.

51.     The information Google publishes at the following weblink is accurate: https://support.google.com/mail?hl=en#topic=7065107.

52.     The information Google publishes at the following weblink is accurate: https://support.google.com/mail?hl=en#topic=3394212 .

53.     The information Google publishes at the following weblink is accurate: https://support.google.com/mail?hl=en#topic=3394150 .

54.     The information Google publishes at the following weblink is accurate: https://support.google.com/mail?hl=en#topic=3394219 .

55.     The information Google publishes at the following weblink is accurate: https://support.google.com/mail?hl=en#topic=3394151 .

56.     The information Google publishes at the following weblink is accurate: https://support.google.com/mail?hl=en#topic=2451730 .

57.     The information Google publishes at the following weblink is accurate: https://support.google.com/mail?hl=en#topic=3394215.

58.    Gmail comes with a built-in list of commonly used attachment keywords including, at least, the following: "attached file"; "I have attached"; "I've attached"; "see the attached"; and "see the attachment" (collectively, "Attachment Keywords").

59.    When a user clicks send (or an icon indicating send), Gmail (RegEx) scans (parses) each email message prior to sending to determine if the email message contains one of these Attachment Keywords but does not include an attachment.

60.    If Gmail determines that an email message contains one of the Attachment Keywords but does not include an attachment, Gmail generates a user prompt to indicate to the user that the user likely intended to include an attachment.

61.    When a Gmail user attempts to send an email that contains the phrase "attached file" without attaching a file to the email, Gmail will prompt the user with the following message:



62.    When a Gmail user attempts to send an email that contains the phrase "I have attached" without attaching a file to the email, Gmail will prompt the user with the following message:



## COUNT I – DIRECT PATENT INFRINGEMENT OF THE '993 PATENT

63.     E-Attach realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

64.     Google has directly infringed the '993 Patent in violation of 35 U.S.C. § 271(a) by performing methods, including its own use and testing of Gmail (an "Accused Product") that embodies the patented inventions of at least claim 11 of the '993 Patent.

65.     Google's infringing Accused Products include, without limitation, Gmail and other e-mail solutions with the same or similar features and functionality that satisfy each element of one or more asserted claims.

66.     The Accused Products satisfy each and every element of each asserted claim of the '993 Patent either literally or under the doctrine of equivalents.

67.     Gmail is an email software program that scans (parses) each outgoing email and asks the user if they meant to attach a file before sending the e-mail if an Attachment Keyword is detected but an attachment is not included.

68.     Gmail enables by default the feature to check for missing e-mail attachments.

69.     Gmail has a set of keywords that will warn the e-mail user about missing attachments if the user is about to send an e-mail containing one of the Attachment Keywords, but no file is attached.

70.     Gmail receives a user input i.e. pressing "send" (or an icon indicating the user is ready to send the email message) that indicates the e-mail message is ready for parsing.

71.     Gmail parses e-mail messages for Attachment Keywords that will trigger a user prompt to indicate to the user that they likely intended to include an attached file.

72.     If a user of Gmail includes one of the Attachment Keywords in the body of the e-mail and attempts to send the message without attaching a file, a reminder prompt is generated.

73.     Defendant's infringing activities are and have been without authority or license under the '993 Patent.

74.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT II – INDUCED PATENT INFRINGEMENT OF THE '993 PATENT

75.    E-Attach realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

76.    Google is liable for indirect infringement under 35 U.S.C. § 271(b) of at least claim 11 of the '993 Patent at least as early as service of the Complaint because it knowingly encourages, aids, and directs others (e.g., end users and customers) to use and operate the Accused Products in an infringing manner and to perform the claimed methods of the '993 Patent.

77.    Since at least as early as service of this original Complaint, Google has had knowledge of the '993 Patent.  Since that time, Google has specifically intended, and continues to specifically intend, for persons who acquire and use the Accused Products, including Google's customers (e.g., individual users, etc.), to use the Accused Products in a manner that infringes the '993 Patent.  This is evident when Google encourages and instructs customers and other end users in the use and operation of the Accused Products via advertisement, technical material, instructional material, and otherwise.

78.    Google specifically intends the Accused Products to be used and operated to infringe one or more claims, including at least claim 11, of the '993 Patent.

79.     Google encourages, directs, aids, and abets the use, configuration, and installation of the Accused Products.

80.     As detailed in Count I above, Defendant has instructed its customers to use the accused methods and Accused Products in an infringing manner.

81.     Google's analysis and knowledge of the '993 Patent combined with its ongoing activity demonstrates Google's knowledge and intent that the identified features of its Accused Products be used to infringe the '993 Patent.

82.     Google's knowledge of the '993 Patent and Plaintiff's infringement allegations against Google combined with its knowledge of the Accused Products and how they are used to infringe the '993 Patent, consistent with Google's promotions and instructions, demonstrate Google's specific intent to induce Gmail users to infringe the '993 Patent.

83.     Plaintiff is entitled to recover from Google compensation in the form of monetary damages suffered as a result of Google's infringement in an amount that cannot be less than a reasonable royalty together with interest and costs as fixed by this Court.

## **JURY DEMAND**

84.     Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

A.   An adjudication that one or more claims of the '993 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B.   An accounting and an award to Plaintiff of damages adequate to compensate Plaintiff for the Defendant's acts of infringement, together with pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

C.   That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285; and

D.   Any further relief that this Court deems just and proper.

Respectfully submitted this 28th day of October 2019.

By: *Kevin S. Kudlac*
Kevin S. Kudlac
State Bar No. 00790089
kevin@connorkudlaclee.com
Jennifer Tatum Lee
State Bar No. 24046950
jennifer@connorkudlaclee.com
Cabrach J. Connor
State Bar No. 24036390

cab@connorkudlaclee.com

**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.777.1254 Telephone
888.387.1134 Facsimile

**ATTORNEYS FOR PLAINTFF**